Mr. Justice De Jesús took no part in the decision of this case.

MARÍA DE JESÚS, Plaintiff, Appellee-Appellant, *v.* MIGUEL J. ARZUAGA, Defendant, Appellant-Appellee.

No. 7725. Argued June 20, 1938.—Decided July 13, 1938.

*V. Brunet* for appellant-appellee.  *Carlos D. Vázquez* for appellee-appellant.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Section 1805 of the Civil Code (1930 ed.) reads as follows:

"The possessor of an animal, or the one who uses the same, is liable for the damages it may cause, even when said animal should escape from him or stray.

"This liability shall cease only in case the damage should arise from *force majeure* or from the fault of the person who may have suffered it."

Plaintiff, in an action for damages based on the foregoing section, obtained judgment for $700 and attorney's fees. Defendant, the owner of a police dog, appeals, and says that the district court erred: in finding that the proximate cause of the accident was an "assault" by the dog; in finding that there was no *force majeure;* in holding that defendant was liable for the injures received by plaintiff; in rendering judgment for $700 with costs and attorney's fees.

Appellant cites Castán, *Comentarios al Código Civil Español* (1931 ed.) to the effect that the code provision is based on a presumption that the owner of the animal is at fault for want of "vigilance". He quotes Manresa (vol. 12, 1931 ed., 574) as authority for the view that if the act of a third person could not have been foreseen or prevented by the owner of an animal, the result would be the same as in the case of *force majeure.* Appellant also cites *Bostock Ferari Amusement Co.* v. *Brocksmith,* 73 N. E. 281, and copies in his brief the opinion delivered by an Ohio Circuit Court in *Seegmueller* v. *Pahner,* 29 Oh. Cir. Ct. 693, cited in 3 C. J. 97, 98, section 330, note 14, under subdivision (*b*), *Bark-*

*ing Dog.* Appellee moves for a dismissal of the appeal as frivolous and for an award of costs and attorney's fees.

María de Jesús was walking on a sidewalk on Fernández Juncos Avenue, one of the two main thoroughfares in Santurce, a thickly populated section of San Juan. The sidewalk was separated from the front yard of defendant's residence by an iron fence. Defendant's dog caused María to fall and break her arm. The only conflict in the evidence was as to the manner in which the dog brought about this result.

A clear preponderance of the evidence was to the effect that as the woman was passing the front gate, the dog rushed out of the yard and attacked her. She testified that she was thrown to the ground by the impact of the dog's forepaws against her back. Her testimony was corroborated by that of at least two apparently intelligent and disinterested eye witnesses. According to the hospital record of the case as described by a hospital physician, she told the same story on her arrival at the hospital immediately after the accident.

There were two witnesses for the defense. One of these witnesses testified that the woman tried to run and fell and that he did not see or hear any dog. The other was defendant's night watchman. He testified in substance as follows:

He slept during the day in a small house on the premises; arose usually about 5 or 6 o'clock in the afternoon and took his meals at defendant's house; the dog was a large black police dog, it was a young dog; witness did not know its age; he had not examined its teeth because he was afraid of it; it was kept on a chain during the day in the rear of the house; witness would take the dog on its chain for a walk in the yard in the afternoon; it could not be turned loose; on the afternoon in question, witness had the dog in the front yard; the dog had its forepaws on the front yard fence as the woman passed by; the dog barked at her, this startled her; she turned, ran against a tree and fell; witness tied the dog, went to the woman's assistance and, in accordance with instructions received from defendant's wife, took the injured woman to the hospital where she told the *"practicante"* that she had become frightened and fell when the

dog had barked at her; the dog—witness continued on cross-exam-ination—was *"un perro bravo"*; if not chained, it would attack people; at first, before the dog came to know witness, it would at-tack him; at first witness was afraid of the dog but later succeeded in establishing a more friendly relationship and took the dog for a walk every afternoon; when the dog barked at the woman, it acted as if it would spring upon her.

The *practicante* mentioned by the night watchman in his testimony was not called as a witness.

The district judge said that plaintiff was entitled to dam-ages even upon defendant's theory of the case. In this we find no error. The night watchman was defendant's employee acting within the scope of his employment and in the per-formance of his duty as such employee. The dog was in his immediate custody and under his control. He knew probably better than anyone else the dog's disposition to attack stran-gers. He had every reason to believe that the dog would attempt to attack or would manifest a disposition to attack the woman as she passed the place where the dog was stand-ing with its paws on the fence. To permit the dog to remain in this position in such circumstances, showed at least a want of ordinary care.

The act of the dog was the proximate cause of the injury and the district judge did not err in so finding. There was no question of *force majeure* and no act of any third person which could be considered as tantamount to *force majeure.* A reading of the opinions in *Bostock Ferari Amusement Co.* v. *Brocksmith* and *Seegmueller* v. *Pahner, supra,* will suffice to distinguish those cases. Plaintiff had a perfect right to be where she was without being subjected to the shock of a sudden, unexpected attack, or attempted attack, by an appa-rently vicious dog, and without being subjected to the menace of such an attack. The act of defendant's dog, negligently —if not deliberately permitted by defendant's employee—was an invasion of that right.

The court did not err in holding that defendant was liable for the injuries received by plaintiff. The damages allowed were not excessive. We find no abuse of discretion in the award of costs. The appeal, we think, is clearly frivolous. It will be dismissed with additional costs including an attorney's fee of $50 to plaintiff-appellee.

Mr. Justice Wolf, dissented.